[No. 9090. Department Two. March 8, 1911.]

W. S. CARY, *as Guardian etc.*, *Respondent*, v. SPARKMAN & McLEAN COMPANY, *Appellant*.[1]

NEGLIGENCE—DANGEROUS PREMISES—LIABILITY OF OWNER—MASTER AND SERVANT—INDEPENDENT CONTRACTOR. A building contractor, who undertakes the entire construction of a building, having full charge of the work, the furnishing of labor and material, and exclusive possession, is an independent contractor, and the owner is not liable for his negligence in leaving an opening near the sidewalk during the work of construction, whereby a pedestrian fell into the basement and was injured, where the opening was not a nuisance in the street itself, within Rem. & Bal. Code, § 8309, and was not called for in the contract, and the injury was not the result of any requirement in the contract.

SAME— NEGLIGENCE OF INDEPENDENT CONTRACTOR— PROXIMATE CAUSE OF ACCIDENT. Where a pedestrian stepping off the sidewalk fell into an opening next to the lot line, carelessly left unguarded by the contractor, the proximate cause of the accident is the failure to guard the opening, and not the provisions of the contract calling for a basement window at that place.

CHADWICK, J., dissents.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 30, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action

[1]Reported in 113 Pac. 1093.

for personal injuries sustained by a pedestrian by falling into the basement of a building through an unguarded opening. Reversed.

*William W. Wilshire,* for appellant.

*Brady & Rummens* and *Leroy V. Newcomb,* for respondent.

MORRIS, J.—Appeal from a judgment awarding damages for personal injuries. Appellant is the owner of property in Seattle, situate on the west side of Fifth avenue between Union and Pike streets, and in August, 1908, let a contract to defendant Cannon, for the erection of a six-story building upon the lot, which building is now known as the Hotel Metropole. Cannon immediately entered into possession of the property, and commenced the construction of the building under his contract, whereby he obligated himself to provide all the materials, furnish all the labor, construct the building according to certain plans and specifications, and to deliver the building when fully constructed and completed to appellant. Under the contract appellant reserved no power of control over the contractor in the construction of the building, other than the right of such general supervision as might be necessary in seeing that the building was constructed in accordance with the plans and specifications.

On the evening of January 16, 1909, while the building was in process of construction, the minor respondent was walking up Union street when, discovering that her skirt was unfastened, she turned north on Fifth avenue, seeking a convenient place where she might arrange her clothing free from observation. The darkest part of the street would be at a point midway between Union and Pike streets and in front of this uncompleted structure. Reaching such point, she stepped back for the purpose of getting more completely in the shadow of the building, and fell into the basement through an unguarded opening that had been left for the purpose of putting in a window to admit light and air into the basement, and received the injuries complained of. The

building was built flush up to the property line, and the opening through which respondent fell was on a level with, and extended up to, the inner line of the sidewalk. The contractor, although made a party defendant, was not served; so that the case proceeded against appellant alone upon a general charge of negligence in permitting the opening along the inner edge of the sidewalk to remain unguarded.

The defense was that the negligence complained of was that of the contractor alone, appellant setting forth in detail the general facts heretofore referred to in regard to its ownership of the lot, the making of the contract, the exclusive possession of the property by Cannon under the contract, his construction of the building according to plans and specifications, and his full charge of the construction, except in so far as appellant reserved the right to insist upon a full compliance with the contract. In other words, it sought to escape liability upon the ground that Cannon was an independent contractor. Appellant sought to have the trial court so rule upon motion for judgment, request for instructions, and in moving for a new trial, and the only error that need be discussed by us is the refusal of the court below to so hold, since our holding upon such question will dispose of the whole case. We must, therefore, first determine if Cannon was an independent contractor.

This relation is defined in *Engler v. Seattle*, 40 Wash. 72, 82 Pac. 136, quoting from 16 Am. & Eng. Ency. Law (2d ed.), 187, and cases cited, as:

"Generally speaking, an independent contractor is one who, in rendering services, exercises an independent employment or occupation, and represents his employer only as to the results of his work, and not as to the means whereby it is to be accomplished. The word 'results,' however, is used in this connection in the sense of a production or product of some sort, and not of service. . . . A reservation by the employer of the right by himself or his agent to supervise the work for the purpose merely of determining whether it is be-

ing done in conformity to the contract does not affect the independence of the relation."

The case further cites *Casement v. Brown*, 148 U. S. 615, to the effect that the relation of independent contractor is established when, under prepared plans and specifications, the contractor agrees to build, furnishing his own employees and material, and to produce a completed structure by means of his own labor and material. To the same effect is *Larson v. American Bridge Co.*, 40 Wash. 224, 82 Pac. 294, 111 Am. St. 904. In *Burns v. McDonald*, 57 Mo. App. 599, we find this definition, taken from 2 Thompson on Negligence, 899:

"The general rule is, that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work, not in itself unlawful or attended with danger to others, according to the contractor's own methods, and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs of such contractor, his subcontractors, or his servants, committed in the prosecution of such work. An independent contractor, within the meaning of this rule, is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. The contractor must answer for his own wrongs and the wrongs committed in the course of his work by his servants."

The same rule is announced generally in *Boardman v. Creighton*, 95 Me. 154, 49 Atl. 663. Upon the general rule, that those who undertake, as in this instance, the construction of an entire building, having full charge of the work, the furnishing of labor, the supply of material, coupled with exclusive possession, save the right of the owner to come upon the premises for the purpose of ascertaining and insisting upon a full compliance with the contract, are independent contractors, as that term is here used and defined, see: *Schwartz v. Gilmore*, 45 Ill. 455, 92 Am. Dec. 227; *Pfau v. Williamson*, 63 Ill. 16; *Kepperly v. Ramsden*, 83 Ill. 354;

*Richmond v. Sitterding,* 101 Va. 354, 43 S. E. 562, 99 Am.
St. 879, 65 L. R. A. 445; and cases cited in note 6, at page
461.

Upon the first question reserved, we are of the opinion that
Cannon was an independent contractor, and that no liability
would attach to the owner of the premises upon which the
building was erected for the negligence of the contractor,
unless the case before us falls within some recognized excep-
tion to this general rule, and these exceptions are as defi-
nite of statement and as clear in their application as the rule
itself.

"Generally speaking, where the act which causes the in-
jury is one which the contractor is employed to perform, and
the injury results from the act of performance and not from
the manner of performance, or where the contractor is em-
ployed to do an act unlawful in itself, or where the injury is
due to defective plans or methods pursuant to which the work
is done, or where the work is inherently or intrinsically dan-
gerous in itself and will necessarily or probably result in
injury to third persons, unless measures are adopted by
which such consequences may be prevented, and in other like
cases, a party will not be permitted to evade responsibility
by placing an independent contractor in charge of the work."
*Kendall v. Johnson,* 51 Wash. 477, 99 Pac. 310.

See, also, *Seattle Lighting Co. v. Hawley,* 54 Wash. 137,
103 Pac. 6; *Engel v. Eureka Club,* 137 N. Y. 100, 32 N. E.
1052, 33 Am. St. 692; *Boomer v. Wilbur,* 176 Mass. 482,
57 N. E. 1004, 53 L. R. A. 172. So, where the ordinary
method of doing the work creates a nuisance, the exception
prevails. *City of Moline v. McKinnie,* 30 Ill. App. 419; *Cuff
v. Newark & N. Y. R. Co.,* 35 N. J. L. 17, 10 Am. Rep. 205;
*Ryan v. Curran,* 64 Ind. 345, 31 Am. Rep. 123.

It is upon this last phase of the exception that counsel for
respondent urge the right of recovery, contending that ap-
pellant knew that the building could not be constructed with-
out openings; that the plans called for this basement window,
and that it could not be constructed without an opening flush

with the sidewalks through which there was a probability of pedestrians falling, and that for this reason the work was inherently and intrinsically dangerous and constituted a nuisance, especially in the light of Rem. & Bal. Code, § 8309, defining a nuisance as the unlawful doing of an act or omitting to perform a duty which injures or endangers the safety of others, or renders dangerous for passage any street or highway, or in any way renders other persons insecure in life. And in support of this contention, strong reliance is had upon *Robbins v. Chicago*, 71 U. S. 657, where the contract called for an excavation of the sidewalk adjoining the building being erected, so as to admit light and air into the basement. A passer-by fell into this excavation in the sidewalk, which was left unguarded, and recovery was sustained upon the theory that a hole in the sidewalk of a large city, left unguarded at night and without lights, was a nuisance, rendering the owner of the lot and building liable. Many other like cases are cited and urged as authoritative here, but the vice of this contention lies in the fact that the opening in controversy was not in the sidewalk, nor was it such an opening as pedestrians, passing along and upon the sidewalk, would ordinarily fall into unless protected by guards or danger signals. To leave such an opening in the street without guards or danger signals falls within every known exception to the independent contractor rule. The owner of a building, whose basement extends under the sidewalk and whose plans call for an excavation of the sidewalk, knows, or must know in law, that his basement cannot be built according to the plans without an opening in the sidewalk into which there is not only a likelihood, but a great probability, that persons walking upon the sidewalk at night will fall, if left without proper and sufficient guards. The work itself calls for a dangerous situation, and the duty of protection cannot be shifted.

But we have no such facts in the present case. The ap-

pellant did not contemplate nor call for this opening in his contract. The contract, it is true, called for a basement window, but this did not necessarily mean nor contemplate that the contractor should create an opening of the size and character of this opening. The manner of providing for this basement window was a matter of detail, wholly within the duty of the contractor. He could put it in in as many different ways as might be possible. His contract called for a window and not an opening, and the time, the manner, and under what circumstances it should be done, were matters over which the owner had neither control, supervision, nor right of suggestion. *Frassi v. McDonald*, 122 Cal. 400, 55 Pac. 139. The owner could demand and insist upon a window at that place in the building, but he could not demand nor insist upon an opening as a necessary part of that window or of its construction. The injury to respondent, then, was not because of any requirement of the contract, but rather was it the result, and the result alone, of the careless and negligent act of the contractor in leaving an unnecessary opening unguarded, for which he alone must answer.

Another way of arriving at a solution of the question is to ascertain what was the proximate cause of this injury, and it can hardly be said it was the provision of the contract calling for a basement window, rather than the careless act of the contractor in unnecessarily leaving an unguarded opening for that window. Builders have different ways of providing for window openings. Some might board over the required space while doing the roughing in until ready to insert the window sash, and then cut the opening; others might so arrange their material as to leave a partial opening for the window frames; while others might leave the opening the size of the required frame. How they did it would be no concern of the owner, but a mere matter of detail not affecting him, so long as the building when completed and turned over to him contained the windows called for by the contract.

Upon this view of the case we quote from *White v. Mayor etc.*, 15 App. Div. 440, 44 N. Y. Supp. 454:

"In actions of this nature the law looks to the proximate cause of the injury which is complained of; and, if that proximate cause is the result of the action of some independent person, the law looks no further to find a responsible agent who must answer for the injury which his act has caused."

Looking for the proximate cause of this injury, it is not hard to find it in the failure to guard the opening. Again, in the same case, it is said:

"Such liability can only exist where the work to be done is such that it is attended with danger, however skillfully and carefully it is performed, in which case, as the doing of the work itself is likely to produce an injury, the person who causes it to be done is held to be liable for what may be the natural consequences of the acts which he has set in motion."

It could hardly be said that putting windows in the front of a building and adjacent to the sidewalk was "attended with such danger, however skillfully and carefully it is performed." It would require no skill and but little care to have placed boards or other proper guards over this opening. The appellant might anticipate from its contract that this basement window would be provided by its contractor, but there was nothing in the contract, nor in the plans to which our attention has been called, from which it could anticipate that the contractor in putting in this window would necessarily create a dangerous opening; nor having created it, leave it unguarded.

In all the cases establishing liability on the part of the owner of the premises where the ordinary method of doing the work creates a nuisance, though the work be done by an independent contractor employing his own servants, it is held that such rule obtains only when the work itself is necessarily a nuisance and the injury results from the negligence of the contractor in the doing of such work. Wharton, Negligence, § 818.

"But building a house adjacent to a public street, with the usual and necessary excavations, . . . is not necessarily dangerous or hazardous, when done with reasonable and proper care; nor is such construction necessarily a nuisance." *City of Moline v..McKinnie, supra.*

We therefore conclude that the work done under this contract does not fall within any recognized exception to the general rule. The work was not in itself unlawful. The injury resulted, not from the act of performance, but from the manner of performance; it was not due to any defect in the plans; it was not due to the employment of an unskillful contractor, nor to one who did not have sufficient knowledge of the work to be performed to execute it in a proper manner, providing he used due care in its construction. The work itself was not inherently nor intrinsically dangerous; it was not a nuisance.

Appellant's motion for judgment at the close of the evidence should have been granted, and for such error the judgment is reversed, and the cause remanded with instructions to dismiss.

DUNBAR, C. J., and CROW, J., concur.

CHADWICK, J. (dissenting)—I dissent. Had the opening been in the sidewalk, plaintiff would recover under the authorities cited; the excavation would have been a nuisance against which the owner could not guard himself by letting a contract to an independent contractor. By the same rule, an owner should be held liable if the excavation is made upon the line of an open sidewalk. This is what was done in this case. The plans called for the cut-out which is placed under all show windows so that light and air may be admitted into the basement of the completed structure. The cut-out or opening was flush with the sidewalk. The rule is that, where an owner undertakes to do a work which in the ordinary mode of doing it is a nuisance, he is liable for any injuries which may result from it to third persons, though the work is done

by the contractor exercising independent employment and employing his own servants. It is only where such work, or the detail of it, is not in itself necessarily a nuisance that the exemption applies. This rule and the exception to it are noted in the cases cited in the majority opinion, and the distinction made is sustained by all the authorities. The liability of the owner, then, is measured by the condition, and not by the distance or exact location of the pitfall, if under the circumstances of the particular case, it is a menace to life or limb; unless the distance from the sidewalk was so great that reasonable minds would concur in holding that it was not a menace to life or limb, or, in other words, a nuisance.

In the instant case, I am unable to distinguish between the cases holding that an excavation or pit left in the sidewalk by an independent contractor will bind the owner, and the present case where the pitfall was flush with the edge of the sidewalk. The pedestrian is entitled to the whole of the walk, and to assume that he may step from one side to the other without danger. Therefore, the excavation being a nuisance in itself, the owner should not be allowed to claim exemption from damages merely because it was created by the contractor who followed the plans and specifications. The owner is bound to furnish proper plans and specifications; and admitting that the contractor left the cut-out under the show window, and that it was in accordance with the plans and specifications, it would be a defect therein within the meaning of the term as applied in cases like this, and the appellant should be held under the general rules announced in the majority opinion. *Robbins v. Chicago*, 71 U. S. 657, states the law applicable to this case and it should be followed.